181

## In re DUBROCA Y PANIAGUA.

District Court, E. D. Pennsylvania. June 6, 1929.

Harold B. Bornemann and David Ralston Stief, both of Philadelphia, Pa., for petitioner.

Jose Antonio Ramos, Cuban Consul, of Philadelphia, Pa., opposed.

THOMPSON, District Judge. This is an application through the petition of Senor Jose Antonio Ramos, consul at Philadelphia of the Republic of Cuba, for the extradition of one Sergio Dubroca y Paniagua to answer upon a criminal charge pending against him within the jurisdiction of the Republic of Cuba.

Under the Treaty of April 6, 1904, between the United States and Cuba for extradition of fugitives from justice, extradition may be granted for the following crime or offense:

"14. Kidnapping of minors or adults, defined to be the abduction or detention of a person or persons in order to exact money from them or their families, or for any other unlawful end." 33 Stat. 2268, art. 2, par. 14.

Through a supplemental petition filed by the Cuban consul, the crime or offense charged is also claimed to be included under article 2, par. 19, of the Additional Extradition Treaty of January 14, 1926, as follows:

"19. Seduction and corruption of minors if made criminal by the laws of both countries." 44 Stat. 2393, art. 2, par. 19.

From the documents relative to the request for extradition setting out the testimony of the witnesses taken in Cuba, it appears that one Emilia Modesta Rodriguez at the time of the occurrence in question was a virtuous girl, a minor, 18 years of age, the daughter of respectable parents residing in Madruga, Cuba. The respondent, Sergio Dubroca, was employed in a sugar mill in the district of Madruga, and had been, with her parents' consent, the suitor of their daughter, Emilia, and had frequently visited her at her home. The young woman was of good habits and reputation, and living with the utmost propriety with her parents. With their consent, she had entertained the suit of Sergio Dubroca, and, when he was away from Madruga, he had carried on correspondence with her by letters.

In the settlement about the sugar mill, the brother of the respondent, named Silvio Dubroca, lived with his wife, and in the same house lived the mother-in-law of Silvio Dubroca. The latter family was of good habits and reputation, and on friendly social relations with the family of Emilia Rodriguez. Emilia Rodriguez frequently visited the family when the women members thereof were at home.

On March 17, 1928, the respondent, Sergio Dubroca, knowing that the young woman was a frequent visitor there, invited her to go along with him to the house of his brother Silvio. She acceded to his request and went, accompanied by Senora Eloisa Rodriguez, the widowed mother-in-law of Silvio Dubroca. A short time after they reached the

house, Senora Rodriguez, her daughter and her son-in-law, Silvio Dubroca, went out by the rear door. The young woman did not notice their departure until she found herself alone with her suitor, Sergio Dubroca. Dubroca then made carnal proposals to her, saying that they would soon be married. In consequence thereof she, after listening to the pleadings of her suitor and his promises of marriage, submitted herself to him, and thus lost her chastity. About an hour and a half later the family of Silvio Dubroca, one by one, returned to the house. She said nothing to any of them about what had occurred, because Sergio Dubroca told her, when she reproached him for his brother's conduct in loaning his house to him for improper purposes, that she should say nothing to Silvio, as he already knew of it. Subsequently, the respondent paid her occasional visits and wrote her letters. In the latter part of May, 1928, as she shortly thereafter learned, he left Cuba for Philadelphia, where he is now in custody.

As a result of the carnal acts committed with the respondent, the young woman at the time of her first accusation in Cuba against the respondent was found to be pregnant.

The extraditable offense under article 2, par. 14, of the Treaty of 1904, cited above, is defined to be "the abduction or detention of a person or persons in order to exact money from them or their families, or for any other unlawful end."

■ While it is apparent that the respondent had an unlawful end in view, namely, that of seducing a virtuous and innocent girl, I think the testimony fails to establish what could be technically construed as abduction or detention. Abduction involves the element of force in the taking away, and the same is involved in unlawful detention. While there was, under the evidence, an element of deceit which can be deduced from the facts, and a preconceived arrangement with the members of the respondent's family to vacate the house after the arrival of the respondent and the girl, there was apparently no force or duress involved. I therefore do not find sufficient proof to establish the offense extraditable under the Treaty of 1904.

The facts developed from the testimony in the record, however, are sufficient to show the intention on the part of the respondent to take the girl to his brother's house for the purpose of seducing her and of sexually corrupting her. The facts amply prove that he enticed the girl to go with him to his brother's house, and procured the departure from that house of his brother's family, with the deliberate intention of seducing the girl of whom he had been a suitor, for it appears in the testimony that, when reproached for allowing the rest of the family to leave, he told her that his brother already knew of his purpose.

■ Extradition based upon the treaty of 1926 for seduction and corruption of minors is conditioned upon the offense being made criminal by the laws of both countries. Section 41 of the Act of Assembly of Pennsylvania of March 31, 1860 (P. L. 382), makes the seduction of a female of good repute, under 21 years of age, under promise of marriage, a misdemeanor, punishable by fine or imprisonment, "Provided, That the promise of marriage shall not be deemed established unless the testimony of the female seduced is corroborated by other evidence, either circumstantial or positive." Pennsylvania Statutes 1920 (West Publishing Co.) § 8042.

The Penal Code of Cuba, which was offered in evidence, provides in paragraph 3 of article 459, as interpreted in open court, "That the seduction made by any person of a woman over twelve years of age and under twenty years, meditating hoax will be punished with the penalty of major arrest." It is therefore established that the seduction of a minor is made criminal by the laws of both countries.

■ It is contended by the attorney for the respondent that there can be no extradition for the offense charged in the Pennsylvania statute, because it requires corroboration of the testimony of the female seduced as to the promise of marriage. While the record of the testimony taken in Cuba clearly establishes the fact that the respondent was an accepted suitor of the girl, which I think would be admissible as circumstantial evidence to corroborate the promise of marriage, it is not, in my opinion, necessary to base a conclusion upon that ground. All that is necessary for extradition is evidence establishing reasonable ground for the belief that the accused has committed a crime, for which extradition is sought, which is an offense within the treaty. Competent evidence to establish reasonable grounds to sustain extradition is not necessarily evidence competent to convict. Fernandez v. Phillips, 268 U. S. 311, 45 S. Ct. 541, 69 L. Ed. 970; Ex parte Glucksman (C. C.) 189 F. 1016; U. S. v. Piaza (D. C.) 133 F. 998.

■ I find, therefore, that sufficient evidence has been produced of the commission of the offense of seduction and corruption of a minor named in article 2, par. 19, of the Treaty of 1926, to justify the respondent's commitment for trial for the offense charged had it been committed in Pennsylvania and no

higher degree of proof is necessary to establish grounds for extradition.

The evidence therefore may be certified to the Secretary of State, in order that a warrant may issue for the surrender of the respondent according to the stipulations of the treaties between the United States and Cuba.